## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

STATE OF INDIANA,

       Plaintiff,

       v.

STARTEL COMMUNICATION LLC; WANDA
M. HALL, individually; ABHIJIT CHOWDHURY,
individually; PIRATEL LLC; and RAPID EAGLE
INC. DBA VOIP ESSENTIAL INC.

       Defendants.

CASE NO. 3:21-cv-00150-RLY-MPB

## **CONSENT DECREE**

      **Plaintiff, the State of Indiana, by and** through its Attorney General Todd Rokita ("Plaintiff"), by counsel, Joseph D. Yeoman, Deputy Attorney General, having filed a Complaint ("Complaint"), and Defendant, Piratel LLC ("Piratel" or "Defendant"), hereby enter into this Consent Decree without trial or adjudication of any issue of fact or law.

      The parties believe it is in their best interests to resolve the issues presented by the State's Complaint and avoid further litigation. The Consent Decree does not constitute an admission by Piratel of any violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(e); the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § Part 310; Indiana Telephone Solicitation of Consumers Act, Ind. Code 24-4.7; the Indiana Regulation of Automatic Machines Dialing Act, Ind. Code 24-5-14; or violation of any applicable law, nor shall it be construed as an abandonment by the State of its assertion that Piratel violated

1

those statutes. The parties consent to entry of a final judgment in this proceeding by the Court and accept this Consent Decree as a final determination of the issues resolved herein.

### JURISDICTION AND SCOPE OF JUDGMENT

1. This Court has jurisdiction and venue over the subject matter of this action and the parties hereto.

2. Piratel is a limited liability company formed under the laws of the State of Delaware. Piratel is registered as a foreign LLC with the California Secretary of State.

3. This Consent Decree constitutes a complete settlement and release by the State of all civil claims that could have brought against Piratel in relation to alleged violations of the Telemarketing Act, the TSR, Indiana Telephone Solicitation of Consumers Act, Indiana Regulation of Automatic Machines Dialing Act, in connection with the alleged calls described in the Complaint.

4. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5. Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

6. The Court approves the terms of the parties' agreement and hereby adopts them as its own determination of this matter and the parties' respective rights and obligations.

7. Entry of this Order is in the public interest.

8. Now, therefore, by consent and agreement of the parties, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

2

## II.    DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.    **"Complaint"**, **"Defendant"**, **"Order"**, **"Plaintiff"**, **"Telemarketing Act"**, and **"TSR"** mean those definitions described above.

B.    **"Assisting and Facilitating"** means providing substantial assistance or support to any third party.

C.    **"Communication"** means any contact, whether formal or informal, between two or more Persons, at any time or place, and under any circumstances whatsoever, whereby information of any kind or nature was transmitted, transferred, disclosed, exchanged, or recorded.  It includes, without limitation, any oral, written, and Electronically Stored Information that is opened or unopened, active, or deleted.

D.    **"Cooperative Voice Service Provider"** means a Voice Service Provider committed to protecting networks and consumers from fraudulent and abusive robocall traffic. A Cooperative Voice Service Provider must agree to, and abide by, all the policies and procedures set forth by US Telecom's Industry Traceback Group ("ITG").

E.    **"Contribution"** means any donation, gift of money, or any other payment, consideration, or thing of value, including, without limitation, personally identifiable information or any other personal data.

F.    **"DNC Registry"** means the National Do Not Call Registry maintained by the Federal Trade Commission.

G.    **"Documents"** is synonymous in meaning and equal in scope to the usage of "document" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web

pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other Electronically Stored Information, including other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate Document within the meaning of the term.

H.      **"Electronically Stored Information"** means, without limitation, computer or electronic files stored on file servers, e-mail servers, work stations, desktops, hard drives, solid-state drives, cloud storage, personal digital assistants, smartphones (e.g., Blackberrys, iPhones, Droids), tablets (e.g., iPads) and other mobile electronic devices, or other electronic social or industrial/business web-based media (e.g., Facebook®, Twitter®, LinkedIn®, Skype®, WhatsApp®, etc.), records, data, reports, and queries derived from or residing in applications and databases, computer printouts, contracts, cost sheets, data compilations from which information can be obtained, derived, or can be translated through detection devices or converted or translated into reasonably usable form, magnetic discs, magnetic strips, magnetic tape, recognition characters, microfiche, microfilm, optical characters, punched cards, punched paper tapes, audio tapes or recordings, or video tapes or recordings.

I.      **"Indiana DNC"** means the Indiana Do Not Call List.

J.      **"Industry Traceback Group"** means the Industry Traceback Group, a consortium conducting private-led efforts to trace back the origin of suspected unlawful Robocalls, or any

successor consortium registered with the Federal Communications Commission pursuant to Section 13 of the TRACED Act and 47 C.F.R. 64.1203.

K.      **"NANP"** means the North American Numbering Plan.

L.      **"Non-Cooperative Voice Service Provider"** means a Voice Service Provider that has been determined by USTelecom's Industry Traceback Group, in its sole discretion, to be a "Non-Cooperative Voice Service Provider" as defined in the January 2020 edition, or any subsequent edition, of its Policies and Procedures;

M.      **"Notification"** means any complaint, communication, request, or notice that is not a Traceback Request from a reliable third-party that a call, set of calls, or traffic is unlawful or puts Defendant on notice that it likely is unlawful.

N.      **"Originator"** means the last (farthest upstream) voice service provider in a Traceback sequence. The Originator may have placed the call itself, or received the call from its customer.

O.      **"Outbound Telephone Call"** means a telephone call initiated to:

1.      Induce the purchase of goods or services;

2.      Solicit a Contribution or payment;

3.      Advertise or offer a loan or extension of credit; or

4.      Obtain information, including, without limitation, through the arrangement of a meeting, that may be used to induce the purchase of goods or services, solicit a Contribution, or solicit a loan or extension of credit.

P.      **"Person"** means any individual, group, organization, unincorporated association, limited or general partnership, corporation, subsidiary, affiliate, or other legal entity.

Q.      **"Relevant Indiana Laws"** means Indiana's telephone privacy laws, including but not limited to the Telephone Solicitation of Consumers Act (the "TSCA"), Ind. Code 24-4.7-4, the Regulation of Automatic Machines Dialing Act (the "Auto-Dialer Act"), Ind. Code 24-5-14, and the Indiana law Prohibiting False or Misleading Caller Identification, Ind. Code § 24-5-14.5-9.

R.      **"Robocall(s)"** means a telephone call that delivers artificial or prerecorded voice messages, in whole or in part, including, without limitation, telephone calls utilizing soundboard technology and ringless voicemail messages.

S.      **"Robocall Mitigation Database"** means the FCC's database that requires all voice service providers regarding their efforts to mitigate unlawful robocalls on their networks.

T.      **"STIR/SHAKEN Authentication Framework"** means the Secure Telephone Identity Revisited and Signature-based Handling of Asserted Information Using Tokens standards. *See* 47 U.S.C. § 227b.

U.      **"Telemarketing"** means the initiation of a telephone call or message for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services, which is transmitted to any person. *See* 47 C.F.R. § 64.1200(f)(13).

V.      **"Telephony Services"** means wireline or wireless telecommunications services, including, without limitation:

1.      the dialing, origination, termination, routing, or transmission of any

telephone calls made over a public switched telephone network;

2.    VoIP Services;

3.    electronic messaging services;

4.    ringless voicemail messages; or

5.    any other common carriage, telecommunications, or information services.

W.    **"Traceback"** means a network-based process that seeks out the source of suspicious traffic. Beginning at a terminating Voice Service Provider, a call is systematically traced from one Voice Service Provider to the preceding Voice Service Provider networks until a Non-Cooperative Voice Service Provider and/or the originating Voice Service Provider or originating customer is identified.

X.    **"Traceback Request"** means any request to determine the source of a Robocall and/or the voice service providers that dialed, originated, transmitted, or routed a Robocall, which request was made by:

1.    A telecommunications carrier or voice service provider;

2.    The Industry Traceback Group;

3.    A law enforcement agency; or

4.    Any other industry organization comprised of telecommunications carriers and/or voice service providers that seek to combat and reduce unlawful Robocalls.

Traceback Requests that are the same campaign and happen in the same 48 hour period are considered one Traceback Request.

Y.    **"U.S. Point of Entry"** means the first downstream Voice Service Provider routing traffic that was originated outside the United States on to the United States Public Switched Telephone Network.

Z.     **"Voice Service Provider"** means a provider of voice service, meaning any service that is interconnected with the public switched telephone network (PSTN) and that furnishes communications to an end user using resources from the North American Numbering Plan. A Voice Service Provider may be located in the United States or be foreign.

AA.     **"Voice Service Provider Customer"** means any Voice Service Provider for whom or for which the Defendant and Defendant's companies, officers, agents, and employees, have an agreement for Defendant to provide services in exchange for something of value.

BB.     **"VoIP"** means Voice over Internet Protocol.

CC.     **"VoIP Services"** means (1) one-way or interconnected VoIP telephony services, including, without limitation, the origination, termination, routing, or transmission of telephone calls made over a public switched telephone network and which requires VoIP-related technology and (2) the resale, assignment, licensing, or provisioning of telephone numbers, including, without limitation, telephone numbers associated with direct inward dialing.

## I.     COMPLIANCE WITH FEDERAL AND INDIANA LAW

IT IS ORDERED that Piratel and its companies, officers, agents, and employees, whether acting directly or indirectly, are permanently restrained and enjoined from engaging in violations of the TSR or Relevant Indiana Laws as amended, Assisting and Facilitating others to engage in violations of the TSR or Relevant Indiana Laws, as amended, and/or the following:

A.     Initiating, causing others to initiate, or Assisting or Facilitating others in initiating, any Outbound Telephone Call that Defendant knows or reasonably should have known plays or delivers a Robocall that includes any language related to or purportedly related to the Social Security Administration or any other governmental imposters; imposters of an entity (for example,

Amazon.com and/or Apple Inc. imposters), or false legal action claims, either in whole or in part, expressly or indirectly;

B.      Transmitting traffic from a Voice Service Provider Customer that Defendant has determined sends unlawful Robocalls by their network monitoring policies established in Section II;

C.      Transmitting traffic from a Voice Service Provider Customer that has not fully implemented STIR/SHAKEN Authentication Framework, or a successor authentication framework if subsequently mandated by applicable federal law or regulation or qualified for extension as granted by the FCC;

D.      Transmitting traffic from a Voice Service Provider Customer where Defendant knows or reasonably should have known was the U.S. Point of Entry or Originator of five (5) or more Traceback Requests or Notifications for unlawful activity within a one (1) year period.  For avoidance of doubt, any Traceback Request or Notification that is determined to be for lawful activity shall not count towards this threshold.

E.      Transmitting traffic from a Voice Service Provider Customer where Defendant knows the Voice Service Provider Customer was the U.S. Point of Entry or Originator and the subject of three (3) or more Traceback Requests or Notifications within a three (3) year period regarding calls verified to be falsely purporting to be from the Social Security Administration, the Internal Revenue Service, or any other governmental entity, subject to the new escalating review, notice, and consultation process for Defendant's Voice Service Provider Customers set forth in Section IV, *infra*.

## II.    NETWORK MONITORING

IT IS FURTHER ORDERED that Piratel and their companies, officers, agents, and employees, must, in connection with the provision of Telephony Services, permanently implement and maintain constant, up-to-date written policies, practices, and procedures monitoring, reviewing, and analyzing call traffic to identify, mitigate, and block unlawful Robocalls or investigate patterns consistent therewith, including, without limitation, the consideration of call duration, call volume, calls per second, the location of the calls' origination or U.S. point of entry, etc.

Piratel agrees to provide any such policies, practices, and procedures, including all documentation in support thereof, to Plaintiff, upon request within fifteen (15) business days of such a request. Plaintiff may raise objections to the sufficiency of such policies, practices, and procedures if they do not meet or exceed standards as set by the FCC or the Industry Traceback Group Policies and Procedures within fifteen (15) days to effectively identify, mitigate, and/or block illegal Robocalls.  If such objections are raised by the Plaintiff, Piratel shall, within fifteen (15) business days of receiving notice of the Plaintiff's objections, either (1) provide examples illustrating how the existing policies, practices, and procedures are sufficient to address the issue(s) raised in each of Plaintiff's objections, or (2) provide proposed modifications to the existing policies, practices, and procedures as needed that would sufficiently address the issue(s) raised in each of Plaintiff's objections. Failure to provide illustrative response or proposed modifications within fifteen (15) days of receiving notice of the Plaintiff's objections, is a violation of this Order.

Piratel agrees that a non-objection shall not be considered an endorsement of any policy or provision.

### III.   SCREENING OF CURRENT AND PROSPECTIVE CUSTOMERS

IT IS FURTHER ORDERED that Piratel and their companies, officers, agents, and employees, are permanently restrained and enjoined from engaging in, or Assisting and Facilitating others to engage in, providing Telephony Services to any Voice Service Provider Customer, or new or prospective Voice Service Provider Customer, without first engaging in a reasonable screening of that Voice Service Provider Customer.  For new or prospective Voice Service Providers Customers, such reasonable screening must occur and be completed before beginning to provide services to the new Voice Service Provider Customers.  For all existing Voice Service Providers Customers, such reasonable screening must occur and be completed within one hundred and twenty (120) days of the entry of this Order.  For all Voice Service Providers Customers, such reasonable screening must recur annually.  All Voice Service Providers Customers must provide updates to any information provided in a prior reasonable screening within thirty (30) days of any changes to such information.  Such reasonable screening must include, but not be limited to:

    A.  Requesting from each Voice Service Provider Customer the following information:

        i.  The name of the Voice Service Provider Customer;

        ii.  The Voice Service Provider Customer's:

            1.  State or country of incorporation/organization;

            2.  Business registration or business license number; and

            3.  The name of the government agency that administers such business registration or business license;

        iii.  A description of the Voice Service Provider Customer's business purpose and activities, including:

1. Whether the Voice Service Provider Customer originates or carries conversational call traffic, or intends to do the same as a customer of Piratel;

2. Whether the Voice Service Provider Customer originates or carries autodialed call traffic, or intends to do the same as a customer of Piratel;

3. Whether the Voice Service Provider Customer acts as an Originator or U.S. Point of Entry; and

4. Whether the Voice Service Provider Customer has customers that engage in Telemarketing;

5. For Voice Service Provider Customers who describe their business as involving Telephony Services, obtaining the Voice Service Provider Customer's Universal Service Fund registration number and a copy of the Voice Service Provider Customer's FCC Form 499 FCC Form 214, and/or any state equivalent thereof, or (for foreign Voice Service Provider Customers only) the foreign equivalent thereof.

iv. The physical address at which the Voice Service Provider Customer will conduct the business;

1. If the physical address is a post office box, private mailbox, or virtual office, a secondary address that is not a post office box, private mailbox, or virtual office.

v.  The name, physical address, email address, and telephone number of the person responsible for payment on the Voice Service Provider Customer's account, and the form of payment to be used;

vi.  The name, physical address, email address, and telephone number for the business's owner(s). If the business is not directly owned by a natural person, then the name, physical address, email address, and telephone number for the natural person(s) who indirectly own(s) the business.

vii.  The name, physical address, telephone number, and email address of the Voice Service Provider Customer's employee responsible for compliance with U.S. state and federal laws prohibiting unlawful Robocalls, and the Voice Service Provider Customer's policies and practices in terms of compliance with such laws and/or addressing unlawful Robocalls generally, including copies of any such written policies and practices;

viii.  The Voice Service Provider Customer's website and any social media page(s) under or through which the Voice Service Provider Customer has transacted or advertised business;

ix.  The Voice Service Provider Customer's IP address(es);

x.  A list of all business and trade names, fictitious names, DBAs has transacted business for the previous three (3) years;

xi.  Whether the Voice Service Provider Customer has been:

1. Determined by USTelecom's Industry Traceback Group, in its sole discretion, to be a "Non-Cooperative Voice Service Provider" as

defined in the January 2020 edition, or any subsequent edition, of its Policies and Procedures; or

2. Blocked from another voice service provider's network after being determined to be a "bad-actor upstream voice service provider" pursuant to a notice to the Federal Communications Commission in a process more formally described in Paragraphs 35-45 of the Federal Communication Commission's Third Report and Order, Order On Reconsideration, and Fourth Further Notice of Proposed Rulemaking in CG Docket No. 17-59 and adopted July 16, 2020;

xii. Whether the Voice Service Provider Customer (including the owner(s) or controlling person(s) of the entity) has ever had an adverse judgment against it in a civil lawsuit alleging claims under the TSR, the TCPA, or any other lawsuit regarding Robocalls, automated dialing, calls to the DNC Registry or any state do not call registry, spoofed caller ID numbers, or otherwise unlawful telemarketing or solicitations;

xiii. Whether the Voice Service Provider Customer is implementing, or has implemented, the STIR/SHAKEN Authentication Framework (to the extent legally required) as of June 30, 2021, unless changed pursuant to applicable legislation, or a successor authentication framework if subsequently mandated by applicable federal law or regulation;

xiv. For U.S.-domiciled Voice Service Provider Customers only:

1. The Voice Service Provider Customer's federal taxpayer identification number;

14

    2.  The Voice Service Provider Customer's Federal Communications Commission (FCC) 499A-filer ID;

  xv.  For Foreign Voice Service Provider Customers only:

    1.  At least two trade or bank references;

    2.  Any FCC 214 filer data;

  xvi.  If the Voice Service Provider Customer engages in Telephony Services:

    1.  copies of the Voice Service Provider Customer's written policies, practices, and procedures documenting or describing its initiation of, and compliance with, Traceback Requests;

    2.  copies of the Voice Service Provider Customer's written policies, practices, and procedures monitoring, reviewing, and analyzing call traffic to identify and block unlawful Robocalls or investigate patterns consistent therewith;

B.  Taking reasonable steps to review and assess the accuracy of the information provided, including but not limited to:

  i.  Reviewing the Voice Service Provider Customer's internet website(s) and social media page(s);

  ii.  Reviewing public databases hosted by relevant state and/or federal/national governments that contain information about the registration or licensing of business entities in order to verify provided business registration/licensing information;

  iii.  Reviewing the Robocall Mitigation Database to verify information provided by the Voice Service Provider Customer;

iv.   Performing reasonable internet searches about the Voice Service Provider Customer;

v.   Reviewing the physical location(s) of the Voice Service Provider Customer to ensure that one exists, that it is a reasonable business address (under all the circumstances);

vi.   Reviewing the domain name for all contact email addresses provided to ensure they correspond with the Voice Service Provider Customer's business and are not readily available to any end user not associated with the Voice Service Provider Customer's business (e.g., the email provided does not end in @gmail, @hotmail, @outlook, @protonmail, etc.);

vii.   Manually calling all contact telephone numbers provided to ensure that responsible parties are reachable;

viii.   Reviewing whether the Voice Service Provider Customer has an employee responsible for compliance, and reviewing any provided compliance-related policies and practices;

ix.   Reviewing, on the FCC's website, any forms the Voice Service Provider Customer filed with the FCC;

x.   Performing reasonable internet searches to determine if the Voice Service Provider Customer or its owner(s) have been the subject of publicly accessible law enforcement action(s) by any local, state, or federal government agency, and reviewing any such publicly accessible actions;

1. Including, searching the FTC's and the FCC's websites to determine if the Voice Service Provider Customer or its control Persons have been the subject of an FTC or FCC enforcement action.

xi. Performing additional reasonable diligence to resolve any concerns or suspicions raised;

xii. For a current or prospective Voice Service Provider Customer that has been accused of dialing, originating, routing, or transmitting of unlawful Robocalls in a lawsuit, reviewing the allegations, making a reasonable attempt ascertain the validity of the allegations, and if necessary, getting assurances that any unlawful behavior has ceased.

## IV.    CUSTOMER REVIEW AND TERMINATION

IT IS FURTHER ORDERED that Piratel and their companies, officers, agents, and employees:

A.    Must immediately suspend a Voice Service Provider Customer, or refrain from entering into, any business relationship with a Voice Service Provider Customer if a review under Section III reveals or if Piratel subsequently learns that the Voice Service Provider Customer:

1.    Engages in Telephony Services, without a current, valid Universal Service Fund registration number or recently filed FCC Form 499, FCC Form 214 or any state equivalent thereof, or (for foreign Voice Service Provider Customers only) the foreign equivalent thereof;

2.    Engages in Telephony Services and is not in the Robocall Mitigation Database;

17

3.      States it does not have a taxpayer identification number if it is a U.S.-domiciled company;

4.      Cannot be verified via free, publicly accessible databases and/or websites hosted by state, federal, and/or foreign governments that contain information about the incorporation, registration, or licensing of business entities;

5.      Does not have a verifiable physical location and/or the address provided is a post office box, private mailbox, virtual office, or any other location for which no physical presence is required to maintain an address at that location, and the Voice Service Provider Customer does not provide a verifiable secondary address that is not a post office box, private mailbox, or virtual address;

6.      Does not have billing address(es) and email address(es) associated with the Voice Service Provider Customer's source of payment for any of the Defendant's services that match or correspond to the physical and mailing addresses, contact telephone number(s), and email address of the Person or entity paying for the Defendant's services;

7.      Has provided false, inaccurate, inconsistent, or misleading information in response to Defendant's screening process pursuant to Section III and declined to correct that information upon request;

8.      Refuses to provide any material information described in Section III;

9.      Does not have a website or social media page providing public information about its business, has only placeholder or template content on its website or social media page, the contact information and location information is inconsistent with that provided to Defendants, and/or does not have a reasonable business reason for not having said items;

10.     Does not have an email address at the same domain name as its website and/or provides contact email addresses that are readily available to any end user not associated with the Voice Service Provider Customer's business (e.g., the email provided does not end in @gmail, @hotmail, @outlook, @protonmail, etc.);

11.     Pays for services by any means other than: (a) a bank transfer from a financial institution domiciled in the United States, (b) a credit card, or (c) a bank or financial institution provided during the screenings under Section III;

12.     Knowingly dials, originates, routes, or transmits unlawful Robocalls, including, without limitation, any Robocall (for the avoidance of doubt, including the content thereof) that fails to comply with 47 C.F.R. 64.1200(b) and 16 C.F.R. 310.4(b)(1)(v) or violates any federal or state law governing unfair and deceptive acts or practices;

13.     Has been determined by USTelecom, in its sole discretion, to be a "Non-Cooperative Voice Service Provider" as defined in its January 2020 edition of its Policies and Procedures;

14.     Has been blocked from another voice service provider's network after being determined to be a "bad-actor upstream voice service provider" pursuant to a notice to the Federal Communications Commission in a process more formally described in Paragraphs 35-45 of the Federal Communication Commission's Third Report and Order, Order On Reconsideration, and Fourth Further Notice of Proposed Rulemaking in CG Docket No. 17-59 and adopted July 16, 2020;

15.     Has not implemented the STIR/SHAKEN Authentication Framework (to the extent required by law) as of June 30, 2021—or prior to entering into business with

Piratel—unless changed pursuant to applicable legislation, or a successor authentication framework if subsequently mandated by applicable federal law or regulation;

For a suspended Voice Service Provider Customer, the Voice Service Provider Customer must be terminated if the Voice Service Provider Customer does not become compliant within 30 days of suspension. Piratel must also immediately terminate, or refrain from entering into, any business relationship with a Voice Service Provider Customer if Piratel or their companies, officers, agents, and employees, whether acting directly or indirectly, become aware of or obtain any information indicating that the Voice Service Provider Customer is likely engaging in conduct prohibited in Section I of this Order. For any Traceback Requests or Notifications regarding calls verified to be falsely purporting to be from the Social Security Administration, the Internal Revenue Service, or any other governmental entity where Defendant knows the Voice Service Provider Customer was the U.S. Point of Entry or Originator of the call, Defendant shall:

1.      Cause an immediate review of the Voice Service Provider Customer's account to be undertaken.

2.      Notify the Voice Service Provider Customer that it has 7-10 days to respond to Piratel and the ITG (if a Traceback Request has been made).  Acceptable resolutions are:

a.      the Voice Service Provider Customer confirming that its underlying customer has been removed.

b.      the Voice Service Provider Customer enhances its robocall mitigation protocol with detail.

c.      the Voice Service Provider Customer implements Stir/Shaken, if not yet implemented.

3.     After review, or failure to provide an adequate resolution as set forth in 2 *supra*, Defendant will cease services for the Voice Service Provider Customer.

4.     If a Voice Service Provider Customer is the U.S. Point of Entry for more than three (3) of these types of Tracebacks or Notifications in a year, Defendant will terminate it as a customer.

## V.     CUSTOMER AGREEMENTS

IT IS FURTHER ORDERED that Piratel and their companies, officers, agents, and employees, whether acting directly or indirectly, agrees to require its Voice Service Provider Customers:

C.  To notify Piratel within twenty-four (24) hours if said Voice Service Provider Customer is:

  i.  Determined by USTelecom's Industry Traceback Group, in its sole discretion, to be a "Non-Cooperative Voice Service Provider" as defined in the January 2020 edition, or any subsequent edition, of its Policies and Procedures;

  ii.  Blocked from another Voice Service Provider's network after being determined to be a "bad-actor upstream voice service provider" pursuant to a notice to the Federal Communications Commission in a process more formally described in Paragraphs 35-45 of the Federal Communication Commission's Third Report and Order, Order On Reconsideration, and Fourth Further Notice of Proposed Rulemaking in CG Docket No. 17-59 and adopted July 16, 2020; or

    iii.  If the Voice Service Provider Customer (including the owner(s) or controlling person(s) of the entity) is subject to an adverse judgment in a civil lawsuit relating to the Voice Service Provider Customer's dialing, origination, routing, or transmitting of unlawful Robocalls (for the avoidance of doubt, this does not include any Consent Decree).

  D.  To promptly provide Piratel, upon Piratel's request, with the identity of and contact information for its customer(s) that was/were the source of reportedly unlawful call traffic the Voice Service Provider Customer routed to Piratel.

## VI.   COOPERATION

IT IS FURTHER ORDERED that Piratel must fully cooperate with representatives of the Plaintiff in this case, in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Piratel must provide truthful and complete information, evidence (including any and all documents and other records), and testimony. Piratel must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Plaintiff's representative may reasonably request upon thirty (30) days written notice, or other reasonable notice, at such places and times as a Plaintiff's representative may designate, without the service of a subpoena, but with per diem and mileage costs pursuant to 28 U.S.C. § 1821 if travel outside of the Central District of California is requested.

Further, to assist the Plaintiff with any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint, and with monitoring of the Piratel's compliance with this order, the Piratel consent, for purposes of the Electronic Communications Privacy Act, to the disclosure, by electronic communications service providers

and remote computing service providers of the contents of or Communications regarding any auto-dialed, telemarketing or prerecorded telephone calls or Communications with Customers regarding services provided by the Piratel.  Piratel further agrees to execute, within five business (5) days of a request from a Plaintiff, any forms or other documentation evidencing consent that may be required by such electronic communications service providers or remote computing service providers related to or associated with the transactions or the occurrences that are the subject of the Complaint. Piratel further agrees to execute, within fifteen business (15) days of a request from a Plaintiff, any forms or other documentation evidencing consent that may be required by such electronic communications service providers or remote computing service providers related to monitoring of the Piratel's compliance with this order.

## VII.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of One Hundred Fifty Thousand ($150,000) is entered in favor of Plaintiff against Defendant as equitable monetary relief in installments over five years in payments of $7,500, $15,000, $27,500, $40,000, and $60,000 The fourth and fifth installments shall be waived by Plaintiff if there have been no violations by Piratel of the injunctive provisions of this Consent Decree.

B.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

C.    Defendant acknowledges that their Taxpayer Identification Numbers may be used for collecting and reporting on any delinquent amount arising out of this Order.

## VIII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtains acknowledgments of receipt of this Order:

A.      Defendant, within seven (7) days of entry of this Order, must submit to Plaintiff an acknowledgment of receipt of this Order sworn under penalty of perjury;

B.      For three (3) years after entry of this Order, for any business that Defendant is a majority owner or controls directly or indirectly must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives with managerial responsibilities for conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in Section IX.  Delivery must occur within fourteen (14) days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities;

E.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## IX.      COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Plaintiff:

A.      One hundred twenty days (120) days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury.

1.      Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Plaintiff may use to communicate with them; (b) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (c) provide a copy of each

24

Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Plaintiff.

B.      Piratel agrees to provide Section II policies within one hundred twenty (120) days of the entry of this Order.

C.      For three (3) years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following: (a) any designated point of contact; or (b) the structure of any Person that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, affiliate, or Person that engages in any acts or practices subject to this Order.

C.      Defendant must submit to the Plaintiff notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against them or any entity in which Defendant has any ownership interest, or any filing for voluntary dissolution, within fourteen (14) days of its filing.

D.      Any submission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Plaintiff's representative in writing, all submissions to the Plaintiff pursuant to this Order must be emailed to joseph.yeoman@atg.in.gov or sent by overnight courier (not the U.S. Postal Service) to:

Consumer Protection Division
c/o Joseph Yeoman or Telephone Privacy

Office of Indiana Attorney General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
p: 317.234.1912 | f: 317.232.7979
joseph.yeoman@atg.in.gov

The subject line must begin: *State of Indiana v. Startel Communication LLC, et al,* 3:21-cv-00150-RLY-MPB.

## X.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create and retain records related to this claim after entry of this Order for three (3) years; for the avoidance of doubt, this includes any and all records related to this claim currently in their possession, including, without limitation, Documents, contracts, call detail records, invoices, and Communications.  Defendant may archive or move to offsite storage any and all call detail records after eighteen (18) months, provided that the archive of offsite storage is maintained for the remaining period.

Additionally, Defendant is to keep the following records for a three (3) year period ongoing:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Records of all contracts, service agreements, invoices, and sales agreements with each Customer, client, supplier, or vendor, including, without limitation, any Communications or Documents related thereto;

C.    Records of all Tracebacks or Notifications concerning the subject matter of the Order, whether received directly or indirectly, such as through a third party, and any response;

D.    All formal written requests from law enforcement agencies, subpoenas, civil investigative demands, search warrants, and related records, and other complaints about unwanted, fraudulent, or abusive Telemarketing or autodialed telephone calls, and all responses thereto;

E.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Plaintiff.

All such records must be voluntarily provided to Plaintiff, if requested. Defendant is only required to provide call detail records that have are not archived or in offsite storage, if requested.

## XI.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, and any failure to transfer any assets as required by this Order:

A.    For matters concerning this Order, Plaintiff is authorized to communicate directly with Defendant, officers, agents, and employees, and all other Persons in active concert or participation with them, whether acting directly or indirectly.    Defendant must permit representatives of the Plaintiff to interview any employee or other individual affiliated with Defendant who has agreed to such an interview.    The individual interviewed may have counsel present.

B.    Upon written request from a representative of the Plaintiff, any consumer reporting agency must furnish consumer reports concerning Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), as amended.

## XII.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

IN WITNESS WHEREOF, the parties have executed this Consent Decree:
Attorney General of Indiana

By:

Joseph D. Yeoman, Deputy Attorney General
Indiana Bar No. 35668-29

Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 234-1912
(317) 232-7979 (Fax)

Date: 3/23/2022

FOR DEFENDANT, PIRATEL LLC

Signature

Karl Douthit
Name

President
Title

Date: 3/25/2022

28

**SO ORDERED this ___ day of _____, 2022.**

_____
UNITED STATES DISTRICT JUDGE